IN THE UNITED STATES DISTRICT COURT
FOR THE Western DISTRICT OF TEXAS
Austin, TX DIVISION

# A13CA0037LY

MEMORANDUM BRIEF IN SUPPORT OF
APPLICATION FOR WRIT OF HABEAS CORPUS TITLE 28 U.S.C.§2254

PETITIONER
STEVEN MICHEAL BACKSTROM

COVER SHEET

TABLE OF CONTENTS

UNITED STATES SUPREME COURT CASES:                          PAGE NO.

* HAINES V. KERNER, 404 U.S. 519,520-21 (1972)                  2

*WILLIAMS V. TAYLOR, 529 U.S. 362,405-06 (2000)                 3

* STRICKLAND V. WASHINGTON, 466 U.S. 668,689                 6,11,12

* GLOVER V. U.S., 531 U.S. 198,204 (2001)                       6

* WIGGINS V. SMITH, 123 S.Ct. 2527                              7

* DAVIS V. ALASKA, 415 U.S. 316                              10,11

* BRADY V. MARYLAND, 373 U.S., at 87                           13

* BANKS V. DRETKE, 540 U.S., at 691 (2004)                     13

* UNITED STATES V. BAGLEY, 473 U.S. 667 (1985)                 14
   CRIMINAL LAW-key-627.5(1), 700(2), 1166(10.10)              15

*STRICKLER V. GREENE, 527 U.S., at 281-82 (1999)               14

* KYLES V. WHITLEY, 514 U.S. 419,433 (1995)                    14

* BRECHT V. ABRAHAMSON, 507 U.S. 619,623 (1993)                15

* DARDEN V. WAINWRIGHT, 477 U.S. 168,181 (1986)                16


FEDERAL 2d and 3d CASES:

* HILL V. JOHNSON, 210 F.3d 481,485 (5th Cir. 2000)             3

* GALVAN V. COCKRELL, 293 F.3d 760,764 (5th Cir.2002)          3

* SINGLETON V. JOHNSON, 178 F.3d 381,384 (5th Cir.1999)        3

* CATALAN V. COCKRELL, 315 F.3d 491,493 n.3 (5th Cir.2002)     3

* JACKSON V. JOHNSON, 194 F.3d 641,651(5th Cir.1999)           3

* BLEDSUE V. JOHNSON, 188 F.3d 250,256(5th Cir.1999)           4

* BOBBITT V. CALDROM, 151 F.3d 1171, [16] (1998)               5

* ADAMS V. BERTRAND, 453 F.3d 428,437(7th Cir. 2006)           9

* DUGAS V. COPLAN, 428 F.3d 317,322(1st Cir.2005)                9

* U.S. V. WILLIAMS, 343 F.3d 423,437(5th Cir.2003)              16

* U.S. V. MASON, 293 F.3d 826,829-30(5th Cir.2002)             17

* U.S. V. CONRAD, 320 F.3d 851,856(8th Cir.2003)               17

* UNITED STATES V. JOHNSON, 968 F.2d 768,769(8th Cir.1992)     18

TEXAS CASE LAWS:

* EX PARTE THOMAS, 953 S.W.2d 286(Tex. Crim.App.1997)           4

* SHELBY V. STATE, 819 S.W.2d 544,550-51(1991)                 11

* WYATT V. STATE, 23 S.W.3d 18,27 (Tex. Crim.App.2000)         13

* LITTLE V. STATE, 991 S.W.2d 864,866(Tex.Crim.App.1999)       13

* EX PARTE KIMES, 872 S.W.2d 700,702(Tex.Crim.App.1993)        14

* CARROL V. STATE, 916 S.W.2d 494,497-98(Tex.Crim.App.1996)    18

IN THE UNITED STATES DISTRICT COURT

FOR THE  WESTERN  DISTRICT OF TEXAS

Austin, TX  DIVISION

| | |
|---|---|
| STEVEN MICHEAL BACKSTROM | § |
| PETITIONER | § |
| | § **A13CA0037  LY** |
| V. | § CIVIL ACTION NO._____ |
| | § |
| RICK THALER, DIRECTOR, | § |
| TEXAS DEPARTMENT OF CRIMINAL | § |
| JUSTICE, INSTITUTIONAL DIVISION, | |
| RESPONDENT | § |


MEMORANDUM BRIEF IN SUPPORT OF

APPLICATION FOR WRIT OF HABEAS CORPUS; 28 U.S.C.§2254

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now, STEVEN MICHEAL BACKSTROM, Petitioner, with this Memorandum Brief in support of his 28 U.S.C.§2254 application for writ of Habeas Corpus, and would show the following to the Court.

I.

JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C.§1331 FEDERAL QUESTION; 28 U.S.C.§1343(a)(3) CIVIL RIGHTS; and venue is proper in the ___WESTERN___ DISTRICT OF TEXAS, as this is the **district** that the claims arose in accordance with 28 U.S.C.§1391(b).

II.

CONFINEMENT AND RESTRAINT

Petitioner is unlawfully confined and restrain of his LIBERTY at

page 1.

the W.P. Clements Unit, 9601 Spur 591, Amarillo, Texas 79107,
Potter County by RICK THALER in his official capacity as the
Director of the Texas Department of Criminal Justice- Institutional
Division pursuant to Petitioner's conviction out of the 33rd Distric
Court of Burnet County, Texas.

III.

LIBERAL CONSTRUCTION RULE

Under HAINES V. KERNER, 404 U.S. 519,520-21 (1972), pro se complaint
held to less stringent standards than pleadings drafted by lawyers
and can only be dismissed for failure to state a claim if beyound
reasonable doubt that Plaintiff can prove no set of facts in support
of claim on which releif can be granted.

IV.

STANDARD OF REVIEW

Under 28 U.S.C.§2254 (d), a writ of habeas corpus on behalf of
a person in custody pursuant to the judgement of a state court shall
not be granted with respect to any claim that was adjudicated on the
merits in state court proceedings unless he shows that the prior
adjudication: (1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established federal
law, or (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
state court. 28 U.S.C.§2254 (d). A decision is CONTRARY TO clearly
established federal law if the state court arrives at a conclusion
opposite to that reached by the Supreme Court of the United States
on a question of law or if the state court decides a case differently

than the Supreme Court has on a set of materially indistinguishable facts. WILLIAMS V. TAYLOR, 529 U.S. 362, 405-06 (2000); see also HILL V. JOHNSON, 210 F.3d 481,485 (5th Cir. 2000).

The statute futher requires that federal courts give great deference to a state court's factual findings. HILL, 210 F.3d at 485. Section 2254 (e) (1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption of correctness applies to explicit and implicit findings of facts which are necessary to the state court's conclusions of mixed law and fact. GALVAN V. COCKRELL, 293 F.3d 760, 764 (5th Cir. 2002). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e) (1).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. SINGLETON V. JOHNSON, 178 F.3d 381, 384(5th Cir. 1999). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts unless there is evidence that an incorrect standard was applied. CATALAN V. COCKRELL, 315 F.3d 491,493 n.3 (5th Cir. 2002). If faced "with a silent or ambiquious state habeas decision, the federal court should "look through' to the last clear state court decision on the matter" to determine whether the state court was procedural or substantive. JACKSON V. JOHNSON, 194 F.3d 641, 651 (5th Cir.1999). This    "look through" doctrine enables a federal court "to ignore and hense" look through an unexplained state court denial

and evaluate the last reasoned state court decision". see BLEDSUE
V. JOHNSON, 188 F.3d 250,256(5th Cir.1999).

V.

PROCEDURAL HISTORY

Petitioner was indicted in Cause No. 35498 for one (1) count
of Aggravated Sexual Assualt of a Child and one (1) count of
Burdurly of Habitation to Commit Indecency with Child. Petitioner
was found GUILTY and SENTENCE by a jury on JULY 26,2010. Motion
for appeal was filed on July 30,2010. Christina Webb was appointed
to petitioner for Direct Appeal in the Court of Appeals, **Case No.**
03-10-00551-CR. Anders Brief filed Febuary 22,2011. Mandate issued
on July 18,2011. Prematurally 11.07 writ of habeas corpus **was**
filed before mandate was issued on August 10,2011. Court of **Criminal**
Appeals denied 11.07 Habeas Corpus on August 26,2011. Appilcant
refiled his 11.07 Habeas corpus under the authority of **Ex Parte**
**THOMAS**, 953 S.W.2d 286 (TEX.CRIM.APP.1997), HABEAS CORPUS-key-290.1
in Burnet County Cause No. 35498-A and was denied without a written
order on _August 26, 2011_ . Now the Petitioner is filing his
28 U.S.C. §2254 Habeas Corpus Application in above said Court.

VI.

STATEMENT OF THE CASE

On Febuary 4,2008, Complaintant, 12 years old at the time and
martial arts student of petitioner of which over the course of
two years, had developed a father/daughter relationship, whom lived
under horrific conditions, gave Petitioner a letter outlining her
peril and requesting a cellular phone. At aprox 2:00 A.M., the
following morning, while on a 15 minute break from work, petitioner
visted complaintant; upon her request, petitioner entered her

window. Within seconds the complainant's mother discovered petitioner
and sent him away.

On Febuary 26,2008, Complaintant ran away from home, to petitioner
and petitioner was arrested for harboring a runaway. Around July
29,2009, complainant came into custody of Ms. Melissa Castillo, a
former martial arts student of petitioner's and close friend of
complainant. At some point during a visit between complainant and
Ms. Castillo, complainant told Ms. Castillo that she had been
twice raped, with the later of the two (2) times being by the
petitioner. Aproximitally three or four months later, petitioner was
arrested and convicted of Aggravated Sexual Assualt of a Child and
Burgurly of Habitation to Commit Indecency with a Child.

## VII.
### EVIDENCIARY HEARING

Petitioner is respectfully requesting a hearing to futher prove
his claims within his writ of habeas corpus. see BOBBITT V. CALDROM,
**151 F.3d 1171,[16] (1998).** "A habeas petitioner is entitled to an
evidenciary hearing as a matter of right where the facts are
disputed if two conditions are met: (1) petitioner's allegations
would, if proved, entitled him to relief; and (2) the court  trier
of facts has not, after a FULL and FAIR hearing, reliable found
the relevant facts.

## VIII.
### PREVIEW OF ARGUREMENTS

1). Constitutional violation of the 6th Amendment of the United
States Constitution; "Ineffective Assistance of Counsel".

2). Constitutional violation of the 5th and 14th Amendments of the United States Constitution; "Brady Violation".

3). Constitutional violation of the 5th and 14th Amendments of the United States Constitution; "Prosecutial Misconduct".

## INEFFECTIVE ASSISTANCE OF COUNSEL

STANDARD OF REVIEW:

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions and simply to ensure that a criminal defendants recieve a fair trial. STRICKLAND V. WASHINGTON, 466 U.S. 668,689.

To obtain reversal of a conviction, the defendant must prove that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome in the proceeding. GLOVER V. U.S., 531 U.S. 198,204(2001),

INEFFECTIVE ASSISTANCE:

Trial counsel refused to meet with petitioner for: evidenciary matters, witnessess, or trial strategies. Counsel would not accept any phone calls from petitioner, and recieved approximately six (6) letters from petitioner and responded to none. Counsel did not visit petitioner at any time at the county jail for any matters discussed above. Total of the circumstances indicated above clearly shows that trial counsel failed to conduct investigations is ineffective assistance because it could have produced pivotal witnessess. Counsel's deficient performance deprived the petitioner of a fair trial, who's result is reliable in violation of the petitioner's 6th Amendment Constitutional right to the United States Constitution. see EXHIBIT (A)

DUTY TO INVESTIGATE:

American Bar Association Standards for Criminal Justice describes the obligation in terms no one could misunderstand in the circumstances of a case like this one:

"It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcements authorities. The duty to inss investigate exists regardless of accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty". 1 ABA STANDARD for CRIMINAL JUSTICE 4-4.1(2d ed. 1982 supp).

U.S. Supreme Court long have referred [to these Standards] as guides to determining what is reasonable. WIGGINS V. SMITH, 123 S.Ct. 2527 (quoting STRICKLAND, 104 S.Ct.2052).

The following issues represent extreme importance, that had counsel spoken with petitioner, or interviewed provided witnesses or investigated the facts herein; the outcome of the trial[would] have been different.

(a). Detective Dillard interviewed complainants pastor, Ms. Tull. Her interview was highly prejudicial towards the State's case, instead of bringing forth the witness or present her recorded DVD, trial counsel rested. (see Exibit B) (PREVIOUSly Submitted)

(b). Had counsel interviewed petitioner's son, Kristopher

Backstrom, he would have learned, as well as the jury, that complainant had told him about a year before any personal relation- ship between petitioner and complainant, about having been raped in JOHNSON PARK (her first of two rape encounters). This would refute complainant's testimony that the petitioner instructed her to tell this lie. see (Vol. 8, pp. 163, LL 20-21). (SEE Exibit (I)) (incl.)

(c). Provided witness, Ms. Stephanie Idell, would have testified that; A) She and her two children invited complainant ice skating mid January 2008 and that at complainant's inststance, petitioner was invited and B) during this outing, complainant, of her own valitation held hands with petitioner on several occations. She was affectionate towards petitioneras opposed to "Repulsed".

(d). CPS temporarily placed complainant with Ms. Lori Halbert on or about Febuary 27th. Petitioner phoned Ms. Halbert that evening. Once complainant descovered the call, she stated, (quote "I want my daddy".) This, more than two months after the supposed rape and repulsion.

(e). While petitioner was incarcerated in the county jail, new witness, Susan Untermeyer, came forward and would have testified that during a conversation with complainant, (her outcry), complain- ant said that petitioner did [not] rape her and that he was a good friend trying to help. (Affidavit is in the possession of Counsel). see EXHIBIT (C). ( PREV. SUBMITTED)

(f). If trail counsel had at any time spoken with petitioner about trial matters, he would have learned that petitioner was in possession of a letter to him from complainant that petitioner

recieved the evening prior to his early morning visit to complain-
ant. The importance of this letter is parramount on two (2) **levels**;
1) it outlines the complainant's peril within her home, **and** 2) it
specifically requests petitioner deliver her a cell phone. The
State (C.P.S.) was in possession of a copy of this letter **but**
failed to disclose it in Discovery because it defines the **reason**
why petitioner visited complainant. As well as the state questioned
whether petitioner was really delivering a cell phone as he
described to investigators and complainant's mother (Vol. 9, pp. 39,
LL. 8). Also complainant testified that petitioner had texted her
prior to his arrival,; this is not plausible because she **hadn't**
yet received a phone. see **EXHIBIT** (D). (PREV. SuBMiTTed)

   Trial counsel failed to investigate all of the above spoken
witnessess and a [totality] of circumstances indicated that counsel's
failure to conduct investigation; see ADAMS V. BERTRAND, **453 F.3d**
**428,437(7th Cir.2006)** is ineffective assistance because it **would**
have have produced pivotal witnesses that would have shown light
to the defense and supported the petitioner plea of "**NOT GUILTY**".

   Trial counsel told petitioner that his strategy was to "Vigerously"
cross-examine the state's witnesses. That was the only **option**
counsel had since he never spoke to petitioner or investigated
witnesses of a possible defense is ineffective assistance. see
DUGAS V. COPLAN, **428 F.3d 317,322(1st Cir.2005)**.

   FAILURE TO ARGUE:

      Trial counsel failed to argue during cross-examination **of**
State's witness, Melissa Castillo (complainant's legal guardian)

about /RE: the illicet E-mails she sent to petitioner's son (minor son) while negotiating with C.P.S. to act as complainant's legal guardian. see EXHIBIT (E)

Had counsel argued the prosecutor's apocryphol claim by the Burnet County Attorney Eddie Arradando of "NO CRIME" (Vol. 1, pp. 5, LL.1, and pp.6, LL.13), several issues of vast importance would have been brought to light.  A) The judge would have viewed the E-mails and immediatly concluded that; 1) a crime had been committed and 2) either the county attorney or prosecutor lied about the E-mails; B) the impeachment of Castillo and C.P.S. caseworker, Jeannie Cole, (Cole was aware of E-mails and failed to investigate) would have lost all credibilty, exacerbated by the fact that when Castillo sent these E-mails, she was President of the Burnet County Elementary School PTA.

The state's own testimony, "GROOMING", in conjnction with obscenity and intent, all of which are inclusive.(Vol. 3, pp. 27, LL. 23-25, and pp.28, LL. 1).

Cross-examination of Castillo would have revealed two (2) important facts: 1) her moral turpitude, and 2) a relevant bias and interest. Castillo made a written statement, she professes to have pressured complainant to outcrying by stating that she (CASTILLO) would "get in trouble" if complainant didn't outcry of which she didn't want to. see EXHIBIT (F Pg. 3, LL. 22-24) (PREV. Submitted)

Without question, a witness' bias is a relevant issue at trial and the Confrontation Clause gives a criminal defendant the right to explore potential biases of an accusing witness through cross-examination. DAVIS V. ALASKA, 415 U.S. 316.

Trail counsel was given a complete copy of the illicet E-mails but either failed to read them or was inept regarding Texas law pertaining to obscenity involving minors. No viable cross-examination of Castillo and the illicet E-mails she was sending to applicant's minor son was a Constitutional violation. The right to confrontation is a fundamental right and is applicable to States by virtue of the 14 Amendment to the United States Constitution. SHELBY V. STATE, 819 S.W.2d 544,550-51(1991); see     also DAVIS V. ALASKA, 415 U.S. 319.

Trail counsel was ineffective for not cross-examining Castillo of the illicet E-mails to explore potential bias of the accusing state's witness. This deprived the applicant of a "fair trial, a trail whose result is reliable". STRICKLAND, 466 U.S.,at 687.

FAILURE TO PROVIDE IMPORTANT FACT WITNESS

State's witness, Debbie Coats, was the initial responder to the state's request for a "SANE" nurse( Sexual Assualt Nurse Exam) regarding the complainant. Testifying in that capicity, her testimony was beyond reproach and she demonstrated that no crime had been committed; specifically no forensic evidence or testimony by the complainant to her that any crime existed.

Then Ms. Coats was allowed to testify to redundant issues like pedofillia, delayed outcry, and that some patients are less than forthcoming As well, there was superflous testimony regarding vaginal vascularity and it's quick healing capabilities. (vol. 5, pp. 29, LL. 9, pp. 30, LL. 5).

The sole purpose of all this testimony was to create the suspicion of applicant's father/daughter relationship. see GUEVARA V. FERRER, 247 S.W.3d 662, "When evidence is so weak as to do no more than create surmise or suspicion of the matter to be proved, the evidence is no more than a scintilla and in effect is no caustion".

PREJUDICE:

Prejudice is established when "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different". STRICKLAND, 466 U.S., at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome". Id. at 694.

By [not] investigating these pivotal witnesses that would have shown great light to the defense towards supporting the applicant's plead of [NOT GUILTY]; not cross-examining of Castillo to show her bias and interest; and for not providing an expert witness as applicant requested in letters to counsel from county jail, (EXHIBIT H ) deprived the applicant of a "fair trial who result is reliable".

Applicant have proved that counsel's performance fell below an objective standard of reasonableness, and the deficient performance prejudiced the applicant. The counsels ineffective assistance violated his Constitutional guaranteed right of the Sixth Amendment to the United States Constitution to effective assistance of Counsel in criminal prosecutions.

This Court should reverse and remand this case back to trial court in futher accordance with the Laws and Constitution of this Land.

BRADY VIOLATION

The State khowingly withheld the CASA files and Manuscripts due to their Exculpatory value. Caseworker Pemberton's testimony would have been so prejudicial to the State that the jury would have returned a different verdict, hence the reason the State refrained from calling her as a witness.

The Fifth and Fourteenth Amendments to the United States Const. requires the government to disclose certain specific types of evidence to defendants.

**STANDARD OF REVIEW:**

In "Brady", the United States Supreme Court concluded that the suppression by the state of evidence favorable to a defendant violates Due Process if the evidence is material either to GUILT or Punishment, without regard to the good or bad faith of the prosecution. BRADY V. MARYLAND, 373 U.S., at 87; WYATT V. STATE, 23 S.W.3d 18,27(Tex.Crim.App.2000). Applicant must satisfy three requirements to establish a "BRADY" violation: (1) the State failed to disclose evidence, (2) favorable to accused and (3) the evidence is material, LITTLE V. STATE, 991 S.W.2d 864,866(Tex.Crim.App.1999). Incorporated into the third prong, materiality, is a requirement that the defendant must be prejudiced by the states failure to disclose the favorable evidence. BANKS V. DRETKE, 540 U.S., at 691 (2004).

The state is prohibited from suppressing evidence capable of esak establishing his innocence; TEXAS CODE OF CRIMINAL PROCEDURES art. 2.01, and the duty to disclose encompasses both impeachment

page 13.

and exculpatory evidence. UNITED STATES V. BAGLEY, 473 U.S. 667

(1985). It is irrelevant whether suppression of the favorable

evidence was done willfully or inadvertently. STRICKLER V. GREENE,

527 U.S., at 281-82(1999). The State's duty to reveal "BRADY"

material to the defense attaches when the information comes into

the state's possession, whether or not the defense requested the

information. KYLES V. WHITLEY, 514 U.S. 419,433(1995).

   In the case herein, the CASA files and Manuscripts were evidence

suppressed by the state, favorable to the defendant and Material

to the GUILT stage of his conviction.

   The Casa files and Manuscripts are Exculpatory evidence due to

CASA caseworker "Margaret Pemberton", an attorney, was highly

involved with complainant from Febuary 28,2008 until complainant's

"outcried" to her August 19,2008.

   Conversations between caseworker Pemberton, in her official

capacity between both State's witness "Ms. Lorrain Halbert" and

applicant reveal the antithesis of complainant's testimony that she

was "REPULSED" by the applicant.

   Complainant testified that she was "REPULSED" by the applicant

after the purported rape in December, 2007 (Vol. 8, pp. 212,111-4,

7,10). But complainant told caseworker Pemberton that she requested

to be adopted by applicant.

   This evidence is favorable to the applicant and material to the

GUILT stage that there [is] a "Reasonable Probability that, had

this evidence been disclosed to the defense, the result of the

proceeding would have been different". EX Parte KIMES, 872 S.W.2d

700,702(Tex.Crim.App.1993) (Quoting BAGLEY, 473 U.S., at 676).

Government's failure to assist defense by disclosing information that might have been helpful in conducting cross-examination amounts to Constitutional violation only if it deprives defendant of fair trial; Constitutional error occurs, and conviction must be reversed only if evidence is material in sense that it's suppression undermines confidence in the outcome of the trial. UNITED STATES V. BAGLEY, 105 S.CT. 3375(1985), Criminal Law-key-627.5(1), 700(2), 1166(10.10).

The suppression of the CASA files and Manuscripts deprived the applicant of a fair trial. Material evidence that would have made a difference in the verdict of the jury and conviction A Constitutional violation of suppression of evidence can not be treated as harmless. The suppression [did] have "substantial and injurious effect or influence in determining the jury's verdict". BRECHT V. ABRAHAMSON, 507 U.S. 619,623(1993).

Therefore, this conviction must be Reversed and Remanded back to trial court for a new trial.

## PROSECUTORIAL MISCONDUCT

Petitioner was deprived of his Constitutional right to a fair trial (DUE PROCESS) to the state's suppression of Ms. Castillo's criminal actions, by [not] telling the judge when asked by the judge, the truth about the illicet E-mails from Castillo to petitioner's minor son. Which were disallowed, therefore depriving petitioner an adequate confrontation of Ms. Castillo which would have expose her bias and interest, not to mention her moral

page 15.

turpitude.

STANDARD OF REVIEW:

The prosecutor's duty in a criminal prosecution is to seek justice. Prosecutorial misconduct may justify the declaration of a mistrial or reversal of a conviction where it "so [infects] the trial with unfairness as to make the resulting conviction a denial of due process". DARDEN V. WAINWRIGHT, 477 U.S. 168,181 (1986).

A claim of prosecutorial misconduct requires proof of improper conduct by the prosecutor that, taken in the context of the trial as a whole, violated the defendant's due process rights. U.S. V. WILLIAMS, 343 F.3d 423,437(5th CIR. 2003).

The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. SMITH V. PHILLIPS, 455 U.S. 209,219, (1982).


PROSECUTORIAL MISCONDUCT:

Once petitioner discovered obscene E-mails from State's witness Melissa Castillo, to his minor son; he contacted the Attorney General's Office to determine if a crime against his son was committed. Petitioner was directed to TEXAS PENAL CODE art.§43.24 (Sale Distribution, or Display of Harmful Material to a Minor). Immediately thereafter, petitioner filed a complaint with Hewitt Police Department . However, after serveral months and the notification of Assistant Distric Attorney Nelson, a complaint had been filed against her witness, the case was dropped.

Petitioner then filed a complaint with the Burnet County Sheriffs Office, Officer Seavers, and again after two (2) months, after Ms. Nelson was made aware of petitioner's attempt to seek justice against her witness, the case was dropped. Meanwhile CPS caseworker, Jeannie Cole, also a State's witness returned petitioner's call from CPS and apprised of these illicet E-mails; however, no investigation ensued.

On the day of trial, prosecutor Nelson told the judge, in an attempt to keep E-mails from trial, that the County Attorney, Eddie Arradando told her that there was [NO] crime. (Vol. 1, pp. 5, LL.1, pp. 6, LL.13). This is a abuse of OFFICIAL OPPRESSION, TEXAS PENAL CODE art.§39.03(a)(2).

Futhermore, when the judge asked Ms. Nelson the content of these E-mails, her reply was "typical thrusting and heaving" (Vol. 1, pp.11, LL. 4). She also failed to tell the judge the recipient of this obscenity was a minor. The prosecutor may not knowingly present false testimony and has a duty to correct testimony that he or she knows to be false. U.S. V. MASON, 293 F.3d 826,829-30(5th Cir.2002).

Prosecutor's improper remarks of replying to the judge of "typical thrusting and heaving" about illicet E-mails and not telling the judge it was sent to a minor, during trial, had cummulative effect that "substantially impaired the defendant's right to a fair trial". U.S. V. CONRAD, 320 F.3d 851,856(8th Cir.2003).

The prosecutor shall not suppress facts or secrete witnessses

capable of establishing the innocence of the accused. TEXAS CODE of CRIMINAL PROCEDURES art. §2.01.

For not telling the judge when asked by the judge, the truth behind the illicet E-mails,(which were disallowed) deprived the petitioner his Constitutional right to an adequate confront- ation of Ms. Castillo; which would have exposed her bias and interest, not to mention her moral turpitude.

A witness bias is a relevant issue at trial and the confront- ation Clause gives a criminal defendant the right to explore biases of an accusing witness through cross-examination . DAVIS V. ALASKA, 415 U.S. 316; also CARROL V. STATE, 916 S.W.2d 494, 497-98(Tex.Crim.App.1996).

PREJUDICED:

Prosecutor's remarks unduly prejudiced the petitioner's opport- unity for a fair trial. The jury's verdict could have reasonably been affected by the prosecutor's improper remarks. UNITED STATES V. JOHNSON, 968 F.2d 768,769(8th Cir.1992).

## CONCLUSION AND PRAYER

Petitioner is restrain of his LIBERTY in violation of his 5th, 6th, and 14th Amendments to the United States Constitution upon the conviction of Aggravated Sexual Assualt of a Child and Burgurly of Habitation to Commit Indecency with a Child out of Burnet County, Texas.

Petitioner prayes this Honorable Court will reverse and remand this case back to trial court in accordance with the Laws and Constitution of this Land.

So prayed on this 13ᵗʰ day of December ,2012.

RESPECTFULLY SUBMITTED,

STEVEN MICHEAL BACKSTROM
T.D.C.J-I.D.#1657938
W.P. CLEMENTS UNIT
9601 SPUR 591
AMARILLO, TEXAS 79107

CERTIFICATE OF SERVICE

I, STEVEN MICHEAL BACKSTROM, TDCJ-ID# 1657938, do state under penalty of perjury that a true correct copy of the above writ of habeas corpus pursuant to 28 U.S.C. §2254 has been deposited in the unit mail box at the W.P. CLEMENTS UNIT addressed to the; OFFICE OF THE CLERK, U.S Dist Ct (Western Dist), 200 West 8ᵗʰ St, Austin Tx 78701.

Executed on this day of 13ᵗʰ of December ,2012.

STEVEN MICHEAL BACKSTROM

page 19.

# Affidavit

Under penalty of perjury I, Kristopher Backstrom, swear that the facts herein are true and correct.

Mr. Eddie Shell did not communicate with me in any form or fashion and had he done so he would have learned that shortly after my father, Steven Backstrom, opened the ATA Black Belt School in Marble Falls, TX, approximately 6 months, Della Skinner and I became involved as boyfriend/girlfriend. I believe this to have taken place around July of 2006. Approximately 7 months after she and I started dating, she told me that she had been raped in Johnson Park in Marble Falls, TX.

This transpired almost a year before she and my father developed a serious father/daughter relationship.

This information would have been available to Mr. Shell before trial and without question would have derived a different verdict.

Had Mr. Shell returned me to the witness stand to refute Ms. Skinner's testimony, the jury would have learned that Ms. Skinner never moved into my father's apartment nor did she ever sleep in the same bed with him at any time that I was there-as she stated.

As well I am personally aware that Ms. Skinner lied to the court about _____ her, my brother Kyle, and me skipping school to smoke marijuana. As well, she openly admitted to me that she lied to her family about Marty Tucker's sexual advances towards her.

Also, had Mr. Shell spoken with me about the e-mail sent to me by Melissa Castillo, he would have learned that while attending martial arts classes, she would pat me on the butt and continuously flirt with me and that I honestly believed that she wanted to pursue a sexual relationship with me.

Signed this 17 day of July, 2012

Respectfully submitted

Kristopher Backstrom

332 Sunset Blvd.

Hewitt, TX 76643

254-292-0896